

MARGOLIN, WEINREB & NIERER, LLP
165 EILEEN WAY, SUITE 101    SYOSSET, NEW YORK 11791    T. (516) 921-3838    F. (516) 921-3824    WWW.NYFCLAW.COM

January 18, 2023

VIA ECF
The Honorable Chief Judge Margo K. Brodie
United States District Court—E.D.N.Y.
225 Cadman Plaza East
Brooklyn, New York 11201

Re: <u>CTJ Investments LP, et al. v. Charmaine Brooks, et al., 20-cv-4983-MKB-PK</u>

Dear Judge Brodie:

We represent CTJ Investments LP and JN Financial Services, LLC ("Plaintiffs") in the above-referenced action. Please accept this letter in opposition to Defendant's pre-motion conference letter requesting to file a second Motion to dismiss the within action. Defendant's first Motion to dismiss the action is currently pending with the Court, along with Plaintiffs' Motion for summary judgment [ECF Docket Nos. 34-40].

This is a mortgage foreclosure action where the Plaintiffs are the owners and holders of a promissory note ("Note") and mortgage ("Mortgage") executed by Defendant Charmaine Brooks ("Defendant"), under which *not a single payment was made* by Defendant. Pursuant to CPLR § 213(4), Plaintiffs advanced the default date due to October 1, 2014, 6 years prior to the commencement of the within action. Defendant's request for a pre-motion conference should be denied for the following reasons.

I. <u>There is a Judicial Determination that the Prior Action was Not Properly Accelerated Preventing Defendant from Raising CPLR § 213(4)(a)</u>

CPLR § 213(4) was amended to add paragraphs (a) and (b), which estop a plaintiff in an action commenced under CPLR § 213(4) (foreclosure action or action to collect on a note) or a defendant in an action commenced under RPAPL § 1501(4) (quiet title action) from asserting that a prior action was not a valid acceleration of the debt, unless the prior action was dismissed on an *express judicial determination that the instrument was not validly accelerated.*

Here, there is an express judicial determination that the Mortgage at issue was not validly accelerated in a prior 2007 action to foreclose the mortgage in Queens Supreme Court (the "Queens Action"), which prevents Defendant from raising CPLR § 213(4)(a), contrary to Defendant's assertions. There was another action in this Court as Civil Action No. 15-cv-475 (the "2015 Action"). In the 2015 Action, Plaintiffs discontinued the Complaint, but Defendant's counterclaim for statute of limitations remained. In her counterclaim in the 2015 Action, Defendant alleged that the statute of limitations had expired based on the Queens Action.

A trial on the issue of statute of limitations was held before the Honorable Judge Raymond J. Dearie. On June 20, 2019, Judge Dearie issued a Memorandum & Order denying Defendant's claim and "direct[ing] entry of judgment in favor of plaintiffs and counterclaim defendants CTJ Investments LP and JN Financial Services LLC on the counterclaim brought by defendant and counterclaim plaintiff Charmaine Brooks under N.Y. Real Property Actions and Proceedings Law § 1501(4)." Judge Dearie

found that "Brooks therefore has not established that the commencement of the Queens Action was a valid acceleration of the Mortgage that started the running of the six-year limitations clock." *See* Memorandum & Order annexed hereto. Accordingly, it was the 2015 Action, which commenced the 6-year the statute of limitations clock. The instant action, which was commenced by the filing of the Complaint on October 16, 2020, was within six years from the January 2015 acceleration of the loan.

II. The New York Foreclosure Abuse Prevention Act ("FAPA") Violates Substantive Due Process Under The United States Constitution

The Fourteenth Amendment of the United States Constitution specifically states as follows: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

A contractual right rises to the level of a constitutionally protected property interest when the contractual right is set for a fixed period, and the holder of the contractual right expects to retain the benefits of its security interest in the property for such period. *See Radwan v. Manuel,* 2022 WL 17332339 (2d Cir. 2022). "Substantive Due Process under the Fourteenth Amendment protects a party against certain government actions regardless of the fairness of the procedures used to implement them." *Bryant v. N.Y.S. Educ. Dep't,* 692 F.3d 202, 217 (2d Cir. 2012).

New York's statutory amendments "are presumed to have prospective application unless the Legislature's preference for retroactivity is explicitly stated or clearly indicated." *Coleman v. Grand,* No. 18-cv-5663(ENV)(RLM), 2021 WL 768167 (E.D.N.Y. Feb. 26, 2021) *quoting In re Gleason (Michael Vee, Ltd.)*, 96 N.Y.2d 117, 122, 726 N.Y.S.2d 45, 749 N.E.2d 724 (N.Y. 2001).

    a. The New Law

Effective December 30, 2022, New York State enacted FAPA. FAPA amended N.Y. C.P.L.R. § 203 adding sub section (h), which as amended states:
> (h) Claim and action upon certain instruments. Once a cause of action upon an instrument described in subdivision four of section two hundred thirteen of this article has accrued, no party may, in form or effect, unilaterally waive, postpone, cancel, toll, revive, or reset the accrual thereof, or otherwise purport to effect a unilateral extension of the limitations period prescribed by law to commence an action and to interpose the claim, unless expressly prescribed by statute.

FAPA also amended N.Y. C.P.L.R. § 3217 adding sub section (e), which as amended states:
> (e) Effect of discontinuance upon certain instruments. In any action on an instrument described under subdivision four of section two hundred thirteen of this chapter, the voluntary discontinuance of such action, whether on motion, order, stipulation or by notice, shall not, in form or effect, waive, postpone, cancel, toll, extend, revive or reset the limitations period to commence an action and to interpose a claim, unless expressly prescribed by statute

Finally, FAPA amended N.Y. G.O.L. §§ 17-105(4) and (5) to state as follows:
> 4. An acknowledgment, waiver, promise or agreement, express or implied in fact or in law, shall not, in form or effect, postpone, cancel, reset, toll, revive or otherwise extend the time limited for commencement of an action to foreclose a mortgage for any greater time or in any other manner than that provided in this section, unless it is made as provided in this section.

5. This section does not change the requirements or the effect with respect to the accrual of a cause of action, nor the time limited for commencement of an action based upon either: (a.) a payment or part payment of the principal or interest secured by the mortgage, or (b.) a stipulation made in an action or proceeding.

The NY State legislature justified the passage of FAPA in order to "overrule the Court of Appeals' recent decision in [*Engel*] … ." S.B. § 5473D at Sponsor Memo, Justification. In *Freedom Mortgage Corp. v. Engel,* the NY Court of Appeals stated that when a noteholder effectuated an acceleration of mortgage debt via the commencement of a foreclosure action, a voluntary discontinuance of that action, that is, the withdrawal of the complaint, constituted a revocation of that acceleration and a restart of the statute of limitations. *See* 37 N.Y.3d 1, 146 N.Y.S.3d 542 (N.Y. 2021).

Here, Plaintiffs' ownership interest in the subject mortgage right rises to the level of a constitutionally protected property interest because the mortgage sets forth a fixed period of time from origination on March 3, 2006 to maturity of March 1, 2036 under which the Plaintiffs' expect to retain the contractual benefits of the mortgage. *See Radwan v. Manuel,* 2022 WL 17332339 (2d Cir. 2022). Due process is violated by FAPA because of the absence of a persuasive reason for retroactivity of the statute and its harsh effects. *See Holly S. Clarendon Trust. Specifically, FAPA has no retroactive time limit, and upsets the Plaintiffs' ability to rely on Engel and* N.Y. GOL §§17-105(4) and (5) to deaccelerate the mortgage debt despite the fact that the Mortgage specifically provides Plaintiffs', as the original lender's predecessors-in-interest, the right to do so. While FAPA's documented purposed was to overturn *Engel*, this is not a persuasive reason for the harsh impact of retroactivity because this retroactivity will cause the mortgage banking industry to lose hundreds of millions of dollars as loans will now be deemed retroactively time-barred.

III. <u>The New York Foreclosure Abuse Prevention Act ("FAPA") violates the Contracts Clause of The United States Constitution</u>

The Contracts Clause states that "[n]o State shall…pass any…Law impairing the Obligation of Contracts …." U.S. Const. art. I, §10, cl. 1. The Second Circuit applies a three (3) part test to determine if a law or government action violates the Contracts Clause. *See Melendez v. City of New York,* 16 F.4th 992, 1032-47 (2d Cir. 2021).

Here, under the first prong, FAPA substantially impairs the contractual relationship between a mortgage holder and the borrower by completely extinguishing a mortgage holder's contractual right to unilaterally revoke acceleration. *See, e.g., Allied Structural Steel,* 438 U.S. at 250 (identifying unreasonable impairment of contract where law, among other things, permanently changed parties' relationship). The permanent repudiation of a lender's right to unilaterally revoke acceleration, particularly where a contract expressly permits unilateral acceleration of a debt, substantially modifies the terms of the mortgage contract and undermines the contractual bargain.

FAPA also fails the second prong of the analysis because it does not serve a significant or legitimate purpose. FAPA does not "protect a basic societal interest." S.B. S5473D at Sponsor Memo, Justification. Rather, FAPA only benefits the "favored group" of delinquent borrowers and the Senator who sponsored the Act, to the detriment of mortgage holders, who have advanced substantial sums of money, not just the loan, but taxes, insurance and other hard costs to maintain the properties, which benefit the borrowers. *See Brendan Lyons,* [Senate attorney facing eviction from Albany residence](#), *Times Union* (April 6, 2022). FAPA was passed in direct response to overrule a decision by a separate branch of government. Moreover, the Legislature's reasoning that "no other civil plaintiff in this state is extended such unilateral and unfettered powers" to "unilaterally manipulate, arrest, stop,

and restart the limitations period" (S.B. S5473D at Justification) is inaccurate, as NY courts have repeatedly held that the discontinuance of an action returns the parties to the status quo. *See Loeb v. Willis,* 100 N.Y. 231, 235 (1885); *Matter of Makowski,* 72 A.D.3d 1515, 1516 (4th Dept. 2010).

Regarding the third prong, the Act unjustifiably interferes with lawfully contracted for expectations by eliminating the lenders' rights, including, but not limited to, their ability to unilaterally revoke acceleration and enforce seriously delinquent debts. Notably, this would impact a significant number of mortgages, as the Fannie Mae/Freddie Mac Uniform Instrument mortgages generally provide for unilateral acceleration and therefore unilateral revocation of acceleration.

In light of the above, Defendant's request for a pre-motion conference to file a second Motion to dismiss should be denied.

                            Respectfully Submitted,

                          By:    */s/Alan H. Weinreb*
                                 Alan H. Weinreb, Esq.

Enclosure
cc: Solomon Rosengarten, Esq., Attorney for Defendant Brooks (via ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CTJ INVESTMENTS LP AS TO AN 89.19%
UNDIVIDED INTEREST AND JN FINANCIAL
SERVICES, LLC AS TO A 10.81% UNDIVIDED
INTEREST

                                  Plaintiffs,                       **MEMORANDUM & ORDER**

        -against-                                        15 CV 475 (RJD)

CHARMAINE BROOKS, et al.,

                                  Defendants.
------------------------------------------------------------------X
DEARIE, District Judge

        Following this Court's denial of the motion brought by defendant Charmaine Brooks for summary judgment on her counterclaim under Section 1501(4) of the New York Real Property Actions and Proceedings Law, which seeks cancellation and discharge of her mortgage obligation, her Section 1501(4) claim was tried before the undersigned, without jury, on April 2, 2019. The following constitutes the Court's findings and decision.

## BACKGROUND

        The Court incorporates by reference its prior decision in this matter; employs the terms defined there; and assumes the parties' familiarity with the course of proceedings, factual record, and principal legal arguments in the motions, at trial, and in the post-trial submissions. Brooks continues to live at the Property without having made payments on the Mortgage since approximately June 2007.

        The premise of the Section 1501(4) claim, as discussed in the Court's prior decision, is one frequently arising in mortgage foreclosure litigation in New York, namely, that the commencement of a prior foreclosure action involving the same mortgage—which was

terminated or abandoned or otherwise did not result in a binding judgement on the merits—nevertheless had the important legal effect of accelerating the full mortgage debt and starting the running of the six year statute of limitations on that debt. See generally Swanson, Adam M. & Bonaros, Jessie D., Mortgage Acceleration and Statute of Limitations Developments in the Second Department, N.Y.L.J. (Mar. 20, 2019). Plaintiffs and counterclaim defendants CTJ Investments LLP and JN Financial Services LLC (collectively, "CTJ") do not dispute the applicable law. Indeed, all the relevant facts—except the one that resulted in a bench trial—are likewise undisputed. The prior foreclosure action that Brooks says now sets her free was commenced against her by FV-1, CTJ's predecessor-in-interest, in August 2007 in Supreme Court, Queens County, index number 020859/2007 (the "Queens Action"). Brooks had moved to dismiss that suit on the ground that FV-1 lacked standing, arguing that although FV-1 was lawful assignee of the Mortgage, it was not *also* lawful assignee of the Note, which New York law requires for standing.[1] It is not clear from the record whether FV-1 affirmatively opposed that motion; in the end, the issue was not adjudicated because the case was dismissed on other grounds.

The sole issue of fact at trial was whether a lawful assignment of the Note had been made to FV-1 before it commenced the Queens Action.

---

[1] The applicable New York law, discussed in the Court's prior decision in this case, is not in dispute here. Both parties reiterated their agreement at the start of the proceedings that for purposes of the trial on Brooks's counterclaim, whether FV-1 had standing depends on whether it was valid assignee of the Note before it commenced the Queens Action.

2

## THE TRIAL EVIDENCE

In her effort to prove her case, after conducting no discovery, Brooks called only one witness, Alan Weinreb, Esq., currently a member of the firm representing CTJ but also the attorney who represented FV-1 during a portion of the pendency of the Queens Action.

Weinreb testified that he has been practicing law approximately 37 years, and in that time has handled probably more than 5,000 mortgage foreclosure cases. He was not FV-1's attorney at the time the Queens Action was filed and did not enter that case as substitute counsel until approximately six years later—after the lawyer who brought the action went out of business and the mortgage servicing company retained him. Although Weinreb testified that he thereafter had occasional conversations with his client (the mortgage servicing company), he also testified that he "did [not] ever communicate with a representative of FV-1 with regards to the [Queens Action]." Tr. at 17.[2] From the outset, these disclosures suggest the limited probative value of Mr. Weinreb's testimony on the fact being tried—which is whether a lawful assignment of the Note to FV-1 occurred years before his involvement in the case.

In any event, counsel for Brooks pressed Weinreb as to whether he made "any inquiry relating to the facts of the case," and Weinreb replied simply, "no." Tr. at 6. Instead, Weinreb said, he reviewed the file that was transmitted to his office, which included the pleadings, and did inquire as to the status of the case. He said he also had discussions with his client on the basis of which he determined that there was a good faith basis for continuing the case.

---

[2] Page references are to the transcript prepared by the Court reporter as "Uncertified Rough Draft for Judge."

Weinreb further testified that there came a time when he filed a motion in the Queens Action for the appointment of a referee to compute the amount due, a step taken during what he called "the second stage of the foreclosure proceeding." The following colloquy ensued:

Q: Did you know at that time whether FV-1 possessed [the] a note?
A: No.
Q: So you are telling the court that you filed a motion [in] which you claim that FV-1 had a right to an order of reference, even though you didn't know whether FV-1 was in possession of the note?

[Objection made and overruled]

Q: Did you have any knowledge as to whether FV-1 was in possession of the note?
A: No.
Q: So did you have any basis for believing that FV-1 was in possession of the note?
A: No. (Tr. at 8)

Weinreb explained: "When the borrower doesn't answer and we proceed on default, there is no issue that the plaintiff had the note because if it's not raised in an answer by the borrower, the rule of law is that any issue as to standing is waived. That's why I proceeded without inquiry." Tr. at 8-9.

The Court inquired further about Weinreb's initial substitution into the case, as follows:

A: ...The reason being that the law firm that started the case went out of business and their cases were being divvied up between attorneys throughout the state.
Q: ...You had no reason to suspect that they didn't have the note? You just had no knowledge?
A: I had no knowledge, and I had no one to ask.
Q: What about the lawyer who actually filed the complaint?
A: He went out of business... closed down. (Tr. at 9-10)

Counsel for Brooks directed Weinreb's attention to certain documents he filed in the Queens Action in support of the motion for appointment of referee, including his two affirmations and the affidavit of Dawn Kernicky, an officer of the mortgage servicing corporation, who attested to her review of the relevant Mortgage documents, the fact of Brooks's default and the amount owed. Brooks's default, the amount owed, and FV-1's election to

4

accelerate the loan.[3] In response to counsel's question, Weinreb stated that the content of his affirmations was true. He specifically acknowledged, inter alia, (i) that he was familiar with the rule that requires an attorney in a foreclosure action to submit an affirmation attesting that he reviewed the file; (ii) that he did review the file, which included the summons and complaint; (iii) that he did speak about the case with the lender's office; and (iv) that he was convinced that there was a good-faith basis for the action.

Counsel inquired further as to the Note, asking Weinreb, first, whether he was "aware of the fact that one of the elements of making a prima facie case in a foreclosure is to show possession of the note?" The following ensued:

> A: Can you qualify that? Would that be now or at the time of the action?
> Q: At the time of the action. . . . Let's assume, as in this case, that the defendant defaults...Is it not still your obligation to prove that the plaintiff was in possession of the note?
> A: At the present time, yes.
> Q: And you sat at the time that you submitted your papers in Queens County there was no such requirement?
> A: That's correct, there was not a requirement. (Tr. at 16)

Finally, during a very brief cross-examination and redirect, when Weinreb was asked to review the case file he brought in response to the trial subpoena, the most critical testimony was elicited. First, Weinreb testified that, when he first received the case file, it had a copy of the Note in it; the document was an exhibit to the motion papers filed by Brooks (represented then and now by the same attorney) seeking to dismiss the Queens Action on the ground that FV-1

---

[3] Kernicky's affidavit and one of Weinreb's affirmations were already in the Court's file as part of the summary judgment record but were admitted as trial exhibits A and B. Weinreb's supplemental affirmation was admitted as Exhibit D. Finally, the summons and complaint from the Queens Action, and the appearance detail for the Queens Action from the New York Unified Court System website, also both already part of the Court's summary judgment file, were separately admitted as trial exhibits C and E.

lacked standing. Brooks's argument in the Queens Action, as referenced in this Court's summary judgment decision, is that the Note had been executed by Brooks in favor of *the original lender*, WMC Mortgage Corp. *but not thereafter assigned to FV-1*.

Weinreb's responses to the final questions asked during redirect examination dispose of this case:

> Q: Do you have any documents that show that WMC assigned that note to anyone?
> A: No.
> Q: Did you make any inquiry as to whether that note had been assigned prior to filing papers in Queens County?
> A: No. (Tr. at 20)

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court finds Mr. Weinreb credible and on the basis of his testimony and the documents admitted into evidence, finds as a matter of fact that an assignment of the Note FV-1 did not occur before the Queens Action was commenced.

As a matter of law, the Court therefore concludes as follows:

First, under the New York law that the parties agree governs here, see, e.g., Aurora Loan Services, LLC. v. Weisblum, 85 A.D.3d 95, 101 (2d Dep't 2011), FV-1 lacked standing to bring the Queens Action because there is no proof that it was an assignee of the Note at the relevant time.

Second, Brooks therefore has not established that the commencement of the Queens Action was a valid acceleration of the Mortgage that started the running of the six-year limitations clock. See, e.g., EMC Mortgage Corp. v. Suarez, 49 A.D.3d 592, 593 (2d Dep't 2008) (holding that a second mortgage foreclosure action was not time-barred because of a prior

6

foreclosure action where "the note was never assigned to" the entity that brought the first action and that entity "therefore never had authority to accelerate the debt or to sue to foreclose...the purported acceleration was [therefore] a nullity and the six-year statute of limitations . . . did *not* begin to run on the entire debt at that time") (emphasis added).

Two final points raised by Brooks in closing argument and a post-trial submission can be summarily rejected. First, as if recognizing that Mr. Weinreb's testimony was fatal to his client's case, counsel for Brooks sought in his closing remarks to argue, "despite Mr. Weinreb's testimony" (Tr. at 23), that by the filing of the complaint, FV-1 impliedly asserted that it was the assignee of the Note and that this assertion constitutes a judicial admission. FV-1's complaint in the Queens Action, however, is silent with respect to the Note, asserting only that it is the "holder of the *mortgage* being foreclosed." Trial Exhibit C at par. "First" (emphasis added). Counsel for Brooks elsewhere concedes as much, having observed that "the original complaint...doesn't specifically state that the plaintiff is in possession of the note." Tr. at 22. Since the complaint makes *no* allegation concerning the Note, *a fortiori* it does not contain a judicial admission that the Note was validly assigned. See generally Zegarowicz v. Ripatti, 77 A.D.3d 650, 653 (2d Dep't 2010) ("Facts admitted by a party's pleading constitute formal judicial admissions."); Prince, Richardson on Evidence § 8-215-219 (11th ed) (distinguishing "formal judicial admissions," which are "conclusive of the facts admitted" from "informal judicial admissions," which are facts incidentally admitted, such as in statement made by a party or witness, and are not conclusive) .

Indeed, Brooks's judicial admission argument is merely an extension of the estoppel argument advanced at summary judgment, that, as already discussed, arguably weighs equally against Brooks in that, as already noted, in formal motion papers filed with the Queens Supreme

7

Court she asserted facts contrary to those she advances here. As the Court has already remarked, both sides here have done an about-face since the days of the Queens Action but the arguments to which these shifts give rise have zero *evidentiary* value. To be clear: neither free houses, nor judgments of foreclosure, are awarded on those shallow bases.

Finally, in a last-ditch effort to escape the trial evidence, Brooks argues in her post-trial brief that it is CTJ rather than she who bears the burden of proof on her Section 1501(4) claim. She relies on a line of established New York cases standing for the proposition that, in a mortgage foreclosure action, it is ultimately the lender-plaintiff's burden to prove that it has standing to sue and that the statute of limitations has not expired. See, e.g., Mellon v. Craig, 169 A.D.3d 627, 628-29 (2d Dep't 2019). Those cases are plainly inapplicable here: no mortgage foreclosure claim is before the Court, nor is the related question of whether any lender presently has standing. The historical question of FV-1's standing in the Queens Action, as a component of Brooks's claim, is unquestionably her burden to prove. See, e.g., 53PL Realty, LLC v. U.S. Bank Nat'l Ass'n, 153 A.D.3d 894, 895-96 (2d Dep't 2017) (discussing what a party bringing an RPAPL §1501(4) claim must demonstrate while holding that default judgment appropriate because lender did not answer the §1501(4) complaint); Stewart Title Ins. Co. v. Bank of New York Mellon, 154 A.D.3d 656, 660 et seq. (2d Dep't 2017) (modifying order granting RPAPL §1501(4) plaintiff default judgment against banks, noting that plaintiff "had failed to submit adequate proof of the facts constituting its [§ 1501(4)] claim"), lv. app. denied, 30 N.Y.3d 909 (2018); Parris v. Fremont Investment & Loan (Report & Recommendation), 2018 WL 4522083, at *4 (E.D.N.Y. May 22, 2019) (Reyes, M.J.), adopted by 2018 WL 3377147 (E.D.N.Y. Jul. 11, 2018) (Chen, J.) (citing Stewart Title for proposition that "[a] plaintiff in a RPAPL § 1501(4)

8

action has the burden to prove that the statute of limitations on an action to foreclose the mortgage has expired") (internal quotations omitted).

In any event, even if it were somehow CTJ's burden to prove an element of the cause of action that secures Brooks freedom from her mortgage debt, the Court would readily declare that burden met. Although neither side directed questions specifically to whether the file that Mr. Weinreb brought with him in response to the trial subpoena was complete, or tampered with, the Court was not shown any reason to doubt the integrity of the file. The Note in that file is a copy of the original, executed in favor of the original lender, not FV-1; and there was nothing in that file or Mr. Weinreb's recollection to establish, or support the inference, that a standing-granting assignment of the Note to FV-1 occurred before it commenced the Queens Action.

## CONCLUSION

For all of the foregoing reasons, the Court directs entry of judgment in favor of plaintiffs and counterclaim defendants CJT Investments LP and JN Financial Services LLC on the counterclaim brought by defendant and counterclaim plaintiff Charmaine Brooks under N.Y. Real Property Actions and Proceedings Law § 1501(4).

**SO ORDERED.**

Dated: Brooklyn, New York
      June 2̶0̶ 2019

s/Raymond J. Dearie
_____
RAYMOND J. DEARIE
United States District Judge